CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 06 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION
APRIL 2017 SESSION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | SEALED |
| | : | |
| v. | : | Criminal Number 7:17cr27 |
| | : | |
| MARK ANTOINE JENNINGS | : | Violations of |
| | : | 18 USC 152(3) |
| | : | 18 USC 157 |
| | : | 18 USC 1341 |

## INTRODUCTION

The Grand Jury charges at times material to this Indictment:

1. **MARK ANTOINE JENNINGS** operated a company known as Financial Associates Enterprise Marketing, Inc., ("FAEM") where he is the sole officer and sole member of the Board of Directors.

2. **MARK ANTOINE JENNINGS** was the sole officer and managing member of FAEM from its incorporation on August 20, 2008, to the present.

3. FAEM was incorporated in Virginia and North Carolina and is located at 3414 Valley View Avenue, Roanoke, VA 24012.

4. FAEM's website states that it provides its clients with a variety of financial services including asset management, debt restructure, retirement planning, tax preparation, real estate services, insurance, and other financial services.

5. Although the FAEM website does not identify bankruptcy assistance and preparation as financial services it provides, **MARK ANTOINE JENNINGS** advises and assists clients with filing bankruptcy petitions.

### Bankruptcy Code

6. The filing of a bankruptcy petition is governed by Title 11 of the United States Code. A person who files a bankruptcy petition is referred to as a "debtor."

7. When a debtor files a bankruptcy petition under Chapter 13 of Title 11, the "automatic stay" provision of the bankruptcy code is triggered. This automatic stay provision prohibits creditors from pursuing the collection of debts and stops real estate foreclosure proceedings.

8. A debtor is required to file several documents either with or within fourteen (14) days of the filing of a bankruptcy petition. These documents include a Statement of Financial Affairs and various schedules of assets and debts. When a debtor files a bankruptcy petition without including the required supporting documentation, and fails to supplement the petition by timely filing supporting documentation, the petition can be dismissed. Failing to file the required supporting documentation and schedules, and thus failing to pursue the bankruptcy case, is sometimes referred to as filing a "skeleton" bankruptcy petition.

9. The filing of skeleton bankruptcy petitions for the sole purpose of obtaining the automatic stay to thwart a pending foreclosure or other collection action, without the intent to complete the bankruptcy filing and comply with the requirements of the court, perpetrates a fraud upon the creditors of the debtor.

## Bankruptcy Preparer

10. A "bankruptcy petition preparer" is a person, other than a lawyer, who is paid to prepare a bankruptcy petition or any other document prepared for filing by a debtor in a United States Bankruptcy Court in connection with a bankruptcy case.

11. The responsibilities and obligations of a bankruptcy petition preparer are governed by the Bankruptcy Code, Title 11, and specifically by 11 U.S.C. § 110. Section 110 states, in relevant part:

> Before preparing any document for filing or accepting any fees from or on behalf of a debtor, the bankruptcy petition preparer shall provide to the debtor a written notice which shall be on an official form prescribed by the Judicial Conference of the United States in accordance with rule 9009 of the Federal Rules of Bankruptcy Procedure.
>
> (B) The notice under subparagraph (A)—
>
> > (i) shall inform the debtor in simple language that a bankruptcy petition preparer is not an attorney and may not practice law or give legal advice;
> > (ii) may contain a description of examples of legal advice that a bankruptcy petition preparer is not authorized to give, in addition to any advice that the preparer may not give by reason of subsection (e)(2); and
> >
> > (iii) shall—
> > > (I) be signed by the debtor and, under penalty of perjury, by the bankruptcy petition preparer; and (II) be filed with any document for filing.

12. Section 110 further provides that "[a] bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document." The identifying number shall be the Social Security account number of the individual preparer or the Social Security

account number of the officer, principal, responsible person, or partner of the bankruptcy petition preparer.

13. Section 110(e)(2)(A) further provides that a bankruptcy petition preparer may not offer legal advice. Section 110(e)(2)(B) provides that legal advice includes advising the debtor:

> (i) whether (I) to file a petition under this title; or (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;
> (ii) whether the debtor's debts will be discharged in a case under this title;
> (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title;
> (iv) concerning— (I) the tax consequences of a case brought under this title; or (II) the dischargeability of tax claims;
> (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;
> (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or
> (vii) concerning bankruptcy procedures and rights.

### Scheme

14. **MARK ANTOINE JENNINGS**, devised and intended to devise a scheme and artifice (a) to defraud creditors using the automatic stay provision triggered upon the filing of a bankruptcy petition, (b) to obtain money by means of false and fraudulent pretenses, representations and promises by taking fees from clients who were experiencing financial distress and were facing foreclosure of their homes or other real estate properties through the offer of loan modification services and (c) to abuse the bankruptcy court process. Rather than provide the promised loan modification services, **MARK ANTOINE JENNINGS** advised and assisted his clients in the filing of successive bankruptcy petitions for the sole purpose of staying

foreclosure proceedings without paying the applicable filing fees, without filing the required documentation, and without intending to pursue the bankruptcy case. **MARK ANTOINE JENNINGS** advised his clients to disregard all correspondence received from the Bankruptcy Court and allow the bankruptcy case to be dismissed after receiving the benefit of the automatic stay of the foreclosure proceedings.

15. **MARK ANTOINE JENNINGS** further advised and assisted his clients with filing successive new bankruptcy petitions anytime a foreclosure proceeding resumed or was initiated.

16. **MARK ANTOINE JENNINGS** is not licensed to practice law within the Commonwealth of Virginia.

17. Accordingly, **MARK ANTOINE JENNINGS** is not authorized to practice law in the form of providing legal advice and instruction regarding bankruptcy.

## COUNT ONE
(Bankruptcy Fraud -- 18 USC §157)

The Grand Jury charges:

1. The Introduction to the Indictment is incorporated by reference into this Count of the Indictment as if fully set forth herein.

2. On June 1, 2011, RO and SO, husband and wife, sought financial advice from **MARK ANTOINE JENNINGS** for the purpose of obtaining mortgage loan modifications on eleven (11) real estate properties they owned.

3. Pursuant to an agreement, RO and SO agreed to pay **MARK ANTOINE JENNINGS** a fee of $2,000 per loan for modification of loans for each of their eleven

(11) real estate properties, for a total of $22,000. RO and SO began paying $1,000 per month in June 2011. These payments continued to March 2012, for a total of $11,000.

4. **MARK ANTOINE JENNINGS** immediately advised RO and SO to stop making payments on their mortgages.

5. Neither RO nor SO had ever filed bankruptcy before and were not familiar with the requirements, procedures, or documents necessary for filing bankruptcy.

6. As part of the scheme and artifice to defraud, **MARK ANTOINE JENNINGS** advised and instructed RO and SO to "take turns" filing bankruptcy petitions. **MARK ANTOINE JENNINGS** ultimately advised and instructed RO and SO to file four (4) skeleton Chapter 13 bankruptcy petitions.

7. On September 26, 2011, pursuant to the advice and instruction of **MARK ANTOINE JENNINGS**, RO and SO filed a joint skeleton Chapter 13 bankruptcy petition, paying only the Administrative Notice Fee in the amount of $39. No supporting documentation was filed.

8. To avoid the bankruptcy preparer requirements codified in Title 11, United States Code, Section 110, **MARK ANTOINE JENNINGS** fraudulently instructed RO and SO to make a false statement on the Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition ("SODA") form, that is, to falsely state that they had not paid any money to anyone for assistance in filing their bankruptcy petition, when, in fact, RO and SO had already paid **MARK ANTOINE JENNINGS** $5,000.00 for his financial assistance.

Page **6** of **18**

9. **MARK ANTOINE JENNINGS** also falsely and fraudulently completed and filed the Statement of Assistance by Bankruptcy Petition Preparer form and falsely certified that he had not been paid for his assistance and that no money was owed to him for his assistance in preparing the bankruptcy petition.

10. **MARK ANTOINE JENNINGS** advised and instructed RO and SO to list only Bank of America as a creditor, although **MARK ANTOINE JENNINGS** was aware that RO and SO had various other creditors. Bank of America was the only creditor threatening foreclosure at that time.

11. **MARK ANTOINE JENNINGS** advised and instructed RO and SO to disregard any and all correspondence received from the Bankruptcy Court.

12. On October 19, 2011, the Bankruptcy Court dismissed RO and SO's bankruptcy petition after they failed to cure several deficiencies and failed to file required forms.

13. On October 25, 2011, just six days after the dismissal of the first bankruptcy petition, pursuant to the advice and instruction of **MARK ANTOINE JENNINGS**, RO filed a second skeleton Chapter 13 bankruptcy petition, paying only the Administrative Notice Fee in the amount of $39 and filing no required documentation.

14. **MARK ANTOINE JENNINGS** advised and instructed RO to list only StellarOne Bank as a creditor, although **MARK ANTOINE JENNINGS** was aware that RO had other creditors.

15. To avoid the bankruptcy preparer requirements of the bankruptcy code, **MARK ANTOINE JENNINGS** fraudulently instructed RO to falsely state that "no assistance was provided" on the SODA form.

16. On November 18, 2011, after RO failed to file the required documents, the Bankruptcy Court issued an Order requiring RO to appear on December 14, 2011, and show cause why the case should not be dismissed. After the Bankruptcy Court issued its Order, RO failed to appear at his Meeting of Creditors scheduled for November 22, 2011.

17. **MARK ANTOINE JENNINGS** advised and instructed RO not to appear for the hearing on the Bankruptcy Court's Order to show cause. On December 14, 2011, RO's second bankruptcy petition was dismissed.

18. **MARK ANTOINE JENNINGS** advised SO that it was her turn to file bankruptcy.

19. On February 6, 2012, pursuant to the advice and instruction of **MARK ANTOINE JENNINGS**, SO filed a third skeleton Chapter 13 bankruptcy petition, paying only the Administrative Notice Fee in the amount of $46.

20. **MARK ANTOINE JENNINGS** advised and instructed SO to list only StellarOne Bank as a creditor, although **MARK ANTOINE JENNINGS** was aware that SO had other creditors.

21. SO did not file a SODA form with her bankruptcy petition. The Bankruptcy Court mailed the form to her along with an Order requiring that it be completed and returned by February 21, 2012. The form was not completed or filed.

22. On February 15, 2012, The Bank of New York Mellon filed a Motion for Relief of Stay, requesting that the Bankruptcy Court relieve the automatic stay and allow it to proceed with its foreclosure activities.

23. On February 16, 2012, the Bankruptcy Court issued a Pre-Hearing Order requiring SO to file a response to the Motion for Relief of Stay within fourteen (14) days of the Order.

24. **MARK ANTOINE JENNINGS** advised and instructed SO to disregard any and all correspondence received from the Bankruptcy Court.

25. On March 1, 2012, the Bankruptcy Court granted The Bank of New York Mellon's Motion for Relief of Stay.

26. On March 2, 2012, the Bankruptcy Court dismissed SO's third bankruptcy petition.

27. At that time, RO and SO lost two (2) real estate properties as a result of foreclosure. **MARK ANTOINE JENNINGS** falsely told RO and SO that they would have their properties returned to them.

28. **MARK ANTOINE JENNINGS** advised RO that it was his turn to file bankruptcy.

29. On April 6, 2012, pursuant to the advice and instruction of **MARK ANTOINE JENNINGS**, RO filed a fourth skeleton Chapter 13 bankruptcy petition, paying only the Administrative Notice Fee in the amount of $46.

30. To avoid the bankruptcy preparer filing requirements, **MARK ANTOINE JENNINGS** fraudulently instructed RO to state that "no assistance was provided" on the SODA form.

31. **MARK ANTOINE JENNINGS** advised and instructed RO to list only StellarOne Bank as a creditor, although **MARK ANTOINE JENNINGS** was aware that RO had other creditors.

32. On April 10, 2012, StellarOne Bank filed a Request for an Order confirming that, under the bankruptcy rules, no automatic stay of creditor action was triggered by the filing of the fourth successive bankruptcy petition.

33. On April 11, 2012, the Bankruptcy Court issued an Order confirming that no stay went into effect upon the filing of the April 6, 2012, bankruptcy petition.

34. RO and SO lost four (4) real estate properties to foreclosure action, even though they held approximately $150,000 in equity in these properties.

35. On May 2, 2012, the Bankruptcy Court issued an Order requiring RO to appear in court on May 16, 2012, to show cause why the bankruptcy case should not be dismissed for abuse of the bankruptcy process. RO called **MARK ANTOINE JENNINGS** when he received the Order but **MARK ANTOINE JENNINGS** did not return his phone call.

36. On May 3, 2012, RO obtained an attorney to represent them in the fourth bankruptcy case.

37. From on or about June 1, 2011, until on or about May 2, 2012, **MARK ANTOINE JENNINGS** devised and intended to devise a scheme and artifice to

defraud and for the purpose of executing and concealing such a scheme and artifice and attempting to do so (a) made false and fraudulent representations, claims and promises concerning and in relation to a proceeding under Title 11, at any time before or after the filing of the petition and (b) aided, abetted, counseled, induced and procured and willfully caused the (1) filing of a petition under Title 11, (2) filing of a document in a proceeding under Title 11, and (3) made false and fraudulent representations, claims and promises concerning and in relation to a proceeding under Title 11, at any time before or after the filing of the petition.

38. All in violation of Title 18, United States Code, Sections 157 and 2.

## COUNT TWO
(Bankruptcy Fraud -- 18 USC 157)

The Grand Jury charges:

1. The Introduction to the Indictment is incorporated by reference into this Count as if fully set forth herein.

2. In or around December 2011 JB sought financial advice from **MARK ANTOINE JENNINGS** after she began to have financial difficulties due to an illness limiting her ability to work, and due to her husband's illness and subsequent death.

3. JB paid **MARK ANTOINE JENNINGS** between $125.00 and $250.00 per month from September 21, 2012, until October 23, 2014, paying a total of $3,275 for **MARK ANTOINE JENNINGS'** services.

4. During this time, as part of his financial advice, **MARK ANTOINE JENNINGS** advised and instructed JB to file three (3) successive fraudulent, incomplete, skeleton Chapter 13 bankruptcy petitions.

5. On December 16, 2011, pursuant to the advice and instruction of **MARK ANTOINE JENNINGS**, JB filed a skeleton Chapter 13 bankruptcy petition to avoid foreclosure on her home by SunTrust Mortgage, paying only the Administrative Notice Fee in the amount of $46.

6. To avoid the bankruptcy preparer requirements, **MARK ANTOINE JENNINGS** fraudulently instructed JB to falsely state that she had not paid any money for assistance on the SODA form.

7. **MARK ANTOINE JENNINGS** also fraudulently completed and filed the Statement of Assistance by Bankruptcy Petition Preparer asserting that he was a bankruptcy petition preparer for JB but falsely certified that he had not been paid any funds and that no money was owed to him for his assistance in preparing JB's bankruptcy petition.

8. **MARK ANTOINE JENNINGS** advised and instructed JB to disregard any and all correspondence received from the Bankruptcy Court.

9. On January 4, 2012, the Bankruptcy Court dismissed JB's bankruptcy petition after she failed to cure several deficiencies, failed to file required forms, and failed to appear for the required Meeting of Creditors.

10. On January 15, 2012, JB signed a formal retainer agreement, retaining **MARK ANTOINE JENNINGS** and FAEM to provide several financial services for

her including bill payment, credit repair, administrative processing of home loans, and asset management.

11. On October 31, 2012, pursuant to the advice and instruction of **MARK ANTOINE JENNINGS**, JB filed a second skeleton Chapter 13 bankruptcy petition to avoid foreclosure on her home by SunTrust Mortgage, paying only the Administrative Notice Fee in the amount of $46.

12. To avoid the bankruptcy preparer requirements, **MARK ANTOINE JENNINGS** fraudulently instructed JB to falsely state that she received no assistance on the SODA form.

13. On November 21, 2012, the Bankruptcy Court dismissed JB's bankruptcy petition after she failed to cure several deficiencies and failed to file required forms.

14. On March 7, 2013, pursuant to the advice and instruction of **MARK ANTOINE JENNINGS**, JB filed a third skeleton Chapter 13 bankruptcy petition to avoid foreclosure on her home by SunTrust Mortgage, paying only the Administrative Notice Fee in the amount of $46.

15. On March 12, 2013, the Office of the United States Trustee filed a Motion for Sanctions against JB. After holding a hearing in which the Bankruptcy Court heard the testimony of JB and **MARK ANTOINE JENNINGS**, the Bankruptcy Court dismissed JB's bankruptcy petition and further ruled that she was not permitted to file a pro se petition for bankruptcy for one year. SunTrust Mortgage foreclosed on JB's home.

16. During the hearing, JB testified that **MARK ANTOINE JENNINGS** provided her with all of the required bankruptcy forms and instructed her as to how to complete the forms. She further testified that whenever she received correspondence from the Bankruptcy Court, she gave it to **MARK ANTOINE JENNINGS** to handle.

17. From in or about December 2011 until on or about March 12, 2013, **MARK ANTOINE JENNINGS** devised and intended to devise a scheme and artifice to defraud and for the purpose of executing and concealing such a scheme and artifice and attempting to do so (a) made false and fraudulent representations, claims and promises concerning and in relation to a proceeding under Title 11, at any time before or after the filing of the petition and (b) aided, abetted, counseled, induced and procured and willfully caused the (1) filing of a petition under Title 11, (2) filing of a document in a proceeding under Title 11, and (3) made false and fraudulent representations, claims and promises concerning and in relation to a proceeding under Title 11, at any time before or after the filing of the petition.

18. All in violation of Title 18, United States Code, Sections 157 and 2.

## COUNTS THREE THROUGH FIVE
(False Bankruptcy Declaration – 18 USC 152(3))

The Grand Jury charges:

1. The Introduction to the Indictment is incorporated by reference into this Count as if fully set forth herein.

2. On or about the following dates, **MARK ANTOINE JENNINGS** knowingly and fraudulently aided, abetted, counseled, induced and procured and willfully caused a material false declaration, certificate and verification to be made under the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case under Title 11, by instructing RO and JB to make false statements on the Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition ("SODA") form in which **MARK ANTOINE JENNINGS** aided, abetted, counseled, induced and procured and willfully caused RO and JB to not disclose that he assisted them in the preparation and filing of the bankruptcy petition, and/or to fraudulently disclose that **MARK ANTOINE JENNINGS** assisted them in the preparation and the filing of the bankruptcy petition at no cost:

| COUNT | DATE | DEBTOR |
|---|---|---|
| **THREE** | April 6, 2012 | RO |
| **FOUR** | October 31, 2012 | JB |
| **FIVE** | March 7, 2013 | JB |

3. All in violation of Title 18, United States Code, Sections 152(3) and 2.

## COUNT SIX
(Mail Fraud -- 18 USC 1341)

The Grand Jury charges:

1. The Introduction and Paragraphs 2 through 36 of Count One of the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2. On or about April 11, 2012, in the Western District of Virginia and elsewhere, **MARK ANTOINE JENNINGS**, having devised a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice, knowingly caused to be delivered, according to the direction thereon, material correspondence by mail from the Bankruptcy Noticing Center in Atlanta, Georgia, that is, a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines, to Rebecca Connelly, Chapter 13 Trustee, P. O. Box 1001, Roanoke, Virginia, 24005-1001, which was automatically generated as a result of the filing of a bankruptcy petition by RO at the direction of, and with the assistance of, **MARK ANTOINE JENNINGS**.

3. All in violation of Title 18, United States Code, Sections 1341 and 2.

## **COUNT SEVEN**
(Mail Fraud -- 18 USC 1341)

The Grand Jury charges:

1. The Introduction and Paragraphs 2 through 16 of Count Two of the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2. On or about November 3, 2012, in the Western District of Virginia and elsewhere, **MARK ANTOINE JENNINGS**, having devised a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice, knowingly caused to be delivered, according to the direction thereon, material correspondence by mail from the Bankruptcy Noticing Center in Atlanta, Georgia, that is, a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines, to Christopher T. Micale, Chapter 13 Trustee, P. O. Box 1001, Roanoke, Virginia, 24005-1001, which was automatically generated as a result of the filing of a bankruptcy petition by JB at the direction of, and with the assistance of, **MARK ANTOINE JENNINGS.**

3. All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT EIGHT
(Mail Fraud -- 18 USC 1341)

The Grand Jury charges:

1. The Introduction and Paragraphs 2 through 16 of Count Two of the Indictment are incorporated by reference into this Count of the Indictment as if fully set forth herein.

2. On or about March 10, 2013, in the Western District of Virginia and elsewhere, **MARK ANTOINE JENNINGS**, having devised a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice, knowingly caused to be delivered, according to the direction thereon, material correspondence by mail from the Bankruptcy Noticing Center in Atlanta, Georgia, that is, a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines, to Christopher T. Micale, Chapter 13 Trustee, P. O. Box 1001, Roanoke, Virginia, 24005-1001, which was automatically generated as a result of the filing of a bankruptcy petition by JB at the direction of, and with the assistance of, **MARK ANTOINE JENNINGS.**

3. All in violation of Title 18, United States Code, Sections 1341 and 2.

A TRUE BILL this 6th day of April 2017.

s/Grand Jury Foreperson
FOREPERSON

RICK A. MOUNTCASTLE
ACTING UNITED STATES ATTORNEY